```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF TEXAS
                              HOUSTON DIVISION

UNITED STEEL WORKERS              §
INTERNATIONAL UNION               §
("LOCAL 6000"),                   §
                                  §
     Plaintiff,                   §
                                  §
v.                                §    CIVIL ACTION NO. H-06-3557
                                  §
ALBEMARLE CORPORATION,            §
                                  §
     Defendant.                   §
```

MEMORANDUM AND ORDER

Pending is Plaintiff United Steel Workers International Union, Local 6000's Motion for Summary Judgment (Document No. 17), and Defendant Albemarle Corporation's Cross-Motion for Summary Judgment (Document No. 18). After having considered the motions, responses, replies, and the applicable law, the Court concludes for the reasons set forth below that Defendant's Cross-Motion for Summary Judgment Motion should be denied, and Plaintiff's Motion for Summary Judgment should be granted.

I. Background

This is an action to compel arbitration of a grievance by United Steel Workers International Union, Local 6000 (the "Union") regarding calculation of pension benefits by Albemarle Corporation ("Albemarle"). Albemarle is a manufacturer of specialty chemicals and the operator of a chemical plant in Pasadena, Texas. *See*

Document No. 18 at 3. The Union is the collective bargaining representative of Albemarle's hourly production and maintenance employees at its Pasadena plant. Id. Albemarle and the Union are parties to a Collective Bargaining Agreement (the "CBA"). *See* Document No. 17 at 1.

The CBA provides that a "grievance" means "any dispute between [Albemarle] and the UNION involving the proper application of, interpretation of, or compliance with [the CBA]." Document No. 17, ex. 1 at 4. Section 8, of Article V of the CBA states that "the UNION . . . may process [a] grievance through the arbitration procedure"; however the right to arbitrate shall not "apply to the administration and contents of the COMPANY benefit plans except as specifically provided for in this agreement." Id., ex. 1 at 14-15. Article XVII, Section A(3) of the CBA contains the exception allowing arbitration of disputes regarding one's right to a pension or the amount of his pension:

> If any differences shall arise between [Albemarle] and a UNION-represented participant or the UNION as to a participant's right to a pension or the amount of his pension, and an agreement cannot be reached between [Albemarle] and the UNION, such question may be referred to an arbitrator . . . . The arbitrator shall have the authority only to decide the question pursuant to the provisions of the Plan and this Article XVII, but he shall not have the authority in any way to alter, add to, or subtract from any such provisions.

Id., ex. 1 at 97.

The CBA incorporates by reference the Retirement Income Plan (the "Plan"), which is recognized as a separate plan governed by ERISA.  Id. at 96.  Before May 1, 1996, the Plan contained a "Career Average Formula," in which the employee earned an annual retirement credit based upon his Annual Earnings, Hours of Service, and Social Security Taxable Wage Base in effect for the year.  *See* Document No. 18, ex. A-8.  Effective May 1, 1996, the Plan was amended by Amendment No. 2, which changed the formula for benefits. Id., ex. A-7.  Article I, Section 1.01, was specifically amended to provide that "Members who retire, die while in the employ of the Company, or terminate on or after May 1, 1996, [shall receive a monthly retirement allowance equal to] fifty-two dollars ($52.00) per month for each year of Pension Benefit Service."  Id.[1] Amendment No. 2, which amended the formula, also defined the term "Pension Benefit Service" in Article I, Section 1.34 of the Plan. Id., ex. A-7.  Albemarle explained the formula change in the employees handbook, with an updated section on "Your Retirement Benefit" dated December 22, 1997.  Id., ex. A-8.  Thus, the employees were told that effective May 1, 1996, the "Career Average Formula" was changed to a "Multiplier Formula," as follows: "$52 x years of PENSION BENEFIT SERVICE."  Id.  Each "year of Pension Benefit Service," as defined in the Plan, was explained as being a

---

[1] The multiplier was later increased from $52.00 per month to $57.00 per month, effective May 1, 1999.  Id., ex. A-10.

"*full* year of plan membership, that is, at least 2,000 Hours of Service.  If you have less than 2,000 hours in a year, you will receive a prorated Pension Benefit Service credit for that year.  It will be computed by multiplying the number of Hours of Service by the fractional year (actual hours divided by 2,000)."  Id.  The handbook explanation included examples of how the formula applied, both for an employee who had 2,000 hours of service in a calendar year as well as an employee who had fewer than 2,000 hours of service in one year.  Id. at 9.  The uncontroverted summary judgment evidence is that the new formula adopted in Amendment No. 2 of the Plan has been applied consistently by Albemarle without complaint from the Union or any of its members from 1996 until 2006, when the grievance giving rise to the instant suit was filed.

The Union in 2006 filed its grievance, which it now seeks to arbitrate under terms of the CBA, contending that Albemarle has not properly calculated pension benefits owed to bargaining Union employees.  The premise for this contention is found in a sort of term sheet that was attached to a contract extension dated April 10, 1996, in which Albemarle and the Union agreed to extend their current CBA at least through May 1, 1999.  The April 10, 1996 contract extension provided in part, "All terms and conditions of the current Collective Bargaining Agreement, with the exception of the attached wage and benefit package, shall remain in full force and effect."  Id. at ex. 9.  The "attached wage and benefit

package," consisted of three pages of truncated terms, sometimes even with incomplete sentences (e.g., "Effective May 1, 1996, a 3% increase applicable to all rates and classifications"), which evidently refer to other formal documents.  Item 7 on this list states, "Effective May 1, 1996, the pension calculation shall be changed from a career average formula to a $52 multiplier.  The new calculation would be as follows: $52 years of service = monthly pension amount."  Id. at pg. 2.  Item 7 evidently refers to the Plan and its Amendment No. 2, described above, which was formally adopted by the Plan on December 26, 1996, retroactively effective to May 1, 1996.  The Union now contends that the term sheet attached to the CBA extension, when it specified "$52 x years of service," was referring to something other than "years of Pension Benefit Service," as defined in the Plan, and that Albemarle by paying Plan benefits to retirees based on years of Pension Benefit Service, as defined in the Plan, has underpaid the benefits.

On November 9, 2006, the Union filed this suit against Albemarle claiming that Albemarle breached the CBA by refusing to submit the grievance to arbitration, and requesting that this Court compel arbitration.  *See* Document No. 1.  Both parties now move for summary judgment on the issue of whether arbitration is required under the CBA to adjudicate the substance of this grievance.

## II. Standard of Review

Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in

this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). "If, on the other hand, the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

## III.  Discussion

The general principles guiding disputes to compel arbitration were established in the United States Supreme Court's *Steelworkers Trilogy*. Oil, Chem. and Atomic Workers' Int'l Union Local 4-447 v. Chevron Chem. Co., 815 F.2d 338, 340 (5th Cir. 1987) (citing AT&T Techs., Inc. v. Commc'ns Workers of Am., 106 S. Ct. 1415, 1418 (1986) (citing Steelworkers v. Enter. Wheel & Car Corp., 80 S. Ct. 1358 (1960); Steelworkers v. Warrior & Gulf Nav. Co., 80 S. Ct. 1347 (1960); Steelworkers v. Am. Mfg. Co., 80 S. Ct. 1343 (1960))). First, "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'" Id. (quoting Warrior & Gulf, 80 S. Ct. at 1352). Second, the courts are the appropriate forum in which to decide whether the parties agreed to arbitrate. Id. (citing

Warrior & Gulf, 80 S. Ct. at 1852-52).  Third, in considering whether a grievance is subject to arbitration, the courts "should determine only whether the parties agreed to submit a grievance to arbitration . . . . [and] should not consider the merits of the claims submitted to arbitration."  Id. (citing Am. Mfg. Co., 80 S. Ct. at 1346).  Indeed, courts are prohibited from examining in any way the merits of the claim--"even if [the substance of the grievance] appears to the court to be frivolous."  AT&T Techs., Inc., 106 S. Ct. at 1419 ("'[Courts] have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support[, or controvert,] the claim.'" (quoting Am. Mfg. Co., 80 S. Ct. at 1346 (footnote omitted)).  Fourth, and finally, there is "a presumption of arbitrability in that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.'" Chevron Chem. Co., 815 F.2d at 340 (quoting Warrior & Gulf, 80 S. Ct. at 1852-53).  "That presumption is successfully rebutted only if the party resisting arbitration shows either (1) the existence of an express provision excluding the grievance from arbitration or (2) the 'most forceful evidence' of a purpose to exclude the claim from arbitration."  Paper,

Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 4-2001 v. ExxonMobile Refining & Supply Corp., 449 F.3d 616, 620 (5th Cir. 2006) (quoting Commc'ns Workers of Am. v. Southwestern Bell Tel. Co., 415 F.2d 35, 39 (5th Cir. 1969)).

When considering whether or not to compel arbitration, the court should make a reasonable inquiry into the character of the grievance to determine whether it comes within the scope of the parties' arbitration agreement.  *See* Int'l Union of Operating Eng'rs v. Sid Richardson Carbon Co., 471 F.2d 1175, 1177-78 (5th Cir. 1973); Phillips Petroleum Co. v. Int'l Bhd. of Boilermakers, 251 F. Supp. 2d 1354, 1359 (S.D. Tex. 2003).  A court "is confined to ascertaining whether the party seeking arbitration is making a claim *which on its face* is governed by the contract."  Am. Mfg. Co., 80 S. Ct. at 1346 (emphasis added); *see also* AT&T Tech. Inc., 106 S. Ct. at 1419 ("'[W]hether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the [c]ourt *on the basis of the contract entered into by the parties*.'" (quoting John Wiley & Sons, Inc. v. Livingston, 84 S. Ct. 909, 912-13 (1964) (emphasis added)); Contra Costa Legal Assistance Workers v. Contra Costa Legal Servs. Found., 878 F.2d 329, 330 (9th Cir. 1989) (a court must review "the specific language of the collective bargaining agreement and the facts alleged in the grievance").  Additionally, a party cannot "create an arbitrable issue where none exists simply by 'couching'

its grievances in terms of the collective bargaining agreement." Steelworkers v. ASARCO, Inc., 970 F.2d 1448, 1451 (5th Cir. 1992).

Albemarle argues that to pay pension benefits to retirees on any basis other than on the Plan's multiplier formula for years of Pension Benefits Service would be to "alter, add to, or subtract from" provisions of the Plan itself, in contravention of Article XVII, Section A(3) of the CBA. In other words, to use a formula based on the undefined term, "years of service," would violate the controlling terms of the CBA and the ERISA Plan. The Union, on the other hand, emphasizes the Court's limited role when deciding issues of arbitrability and the rule that the Court is not to consider the merits of the claim. The Union insists that it is making a claim which on its face is governed by the CBA, namely, that Albemarle is not properly calculating pension benefit amounts for bargaining unit employees.

The Union's Statement of Grievance filed May 10, 2006, demanded that the multiplier formula be applied to "years of service" and not to years of Pension Benefit Service, and that "all employees which may have been shorted or will be shorted pension benefits" be made whole. The Union's Complaint, filed to enforce the arbitration provision of the CBA, alleges that Albemarle breached Article XVII and other provisions of the CBA "by not properly calculating pension benefits due bargaining unit employees." Document No. 1 at 2.

As set forth above at page 2, Article XVII, Section A(3) of the CBA provides that if differences arise between Albemarle and the Union as to "a participant's right to a pension or the *amount* of his pension," and agreement is not reached between Albemarle and the Union, the "question may be referred to an arbitrator." (emphasis added). The Union's grievance and its Complaint in this instance fall within the foregoing language inasmuch as the Union is contending that Albemarle has shorted the Union's members on the amounts of pension benefits to which they are entitled.

Albemarle argues that the dispute is not arbitrable because the Union's grievance would require one "to alter, add to, or subtract from" the Plan, which is proscribed by Article XVII. But the exact language of the sentence from which Defendant extracts that language reads,

> The *arbitrator* shall have the authority only to decide the question pursuant to the provisions of the Plan and this Article XVII, but *he* shall not have the authority in any way to alter, add to, or subtract from any such provisions.

Document No. 17, ex. 1 at 97 (emphasis added). Thus, the proscription of Article XVII is a limitation upon the *arbitrator* when the arbitrator resolves the dispute and if the *arbitrator* exceeds his or her authority, then that decision may be vacated by the Court when the arbitral award is appealed.

Rock-Tenn Co. v. Paper, Allied-Indus. Chemical & Energy Workers Intern. Union, 108 F. Appx. 905 (5th Cir. 2004) is a case in point.  Similar to the CBA in the instant case, the CBA in Rock-Tenn provided,

> [T]he jurisdiction of the authority of the impartial arbiter and his opinion and award, shall be confined to the interpretation of the provision or provisions of this Agreement at issue between the Company and the Union. The impartial arbiter shall have no authority to add to, detract from, alter, amend, or modify any provision of this Agreement or impose on any party hereto a limitation or obligation not explicitly provided for in this Agreement.

Id. at 907.  When the arbitrator violated this instruction by imposing on Rock-Tenn a clear and distinct limitation on its ability to subcontract, the court found that the arbitrator had written into the CBA a new provision that was not found in the CBA and contravened Rock-Tenn's uncontested past practices over some period of time.  Thus, the arbitrator exceeded the authority delegated to him under the CBA, and the district court's judgment vacating that arbitral award was affirmed.  *See also* Southwestern Elec. Power Co. v. Local Union No. 738, 293 F.2d 929, 932 (5th Cir. 1961) (*affirming* trial court order to arbitrate grievance and rejecting the company's argument that no arbitrable grievance was asserted because as a matter of law the CBA forbid arbitrators "to add to, subtract from, or modify the terms of this Agreement," and holding that while the company made "an extended argument upon the

12

merits," "These are not for our consideration on the issue of whether there is an arbitrable grievance under the terms of the contract."); Tobacco Workers Int'l Union v. Lorillard Corp., 448 F.2d 949, 955 (4th Cir. 1971)(*held*, CBA clause that arbitrator has "no authority to add to or subtract from, or in any way alter or modify this Agreement," is "not a limitation on arbitrability, but is instead merely a limitation on the arbitrator's power to fashion an award.").

So it is here.  The Article XVII language relied upon by Defendant is a limitation upon the arbitrator.  If he exceeds that authority by altering, adding to, or subtracting from the provisions of the Plan and Article XVII of the CBA, Albemarle may at that time invoke the jurisdiction of the Court to vacate the arbitral award.  In the meanwhile, however, the Court is constrained not to address the merits of the case, to recognize that an arbitrable dispute has arisen regarding the amount of pension benefits due to Union members under the Plan, and to grant Plaintiff's Motion for Summary Judgment compelling arbitration of that claim.

## IV.  Order

Accordingly, it is

ORDERED that Plaintiff United Steel Workers International Union Local 6000's Motion for Summary Judgment (Document No. 17) is

13

GRANTED as follows:  the United Steel Workers International Union, Local 6000 and Albemarle Corporation shall proceed to arbitration in accordance with the Collective Bargaining Agreement for resolution of this dispute.  It is further

ORDERED that Defendant Albemarle Corporation's Cross-Motion for Summary Judgment (Document No. 18) is DENIED.

The Clerk shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, on this 19th day of February, 2008.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE